Brown v. Hamlett.

♦

John Brown et al. v. Joel F. Hamlett et al.

1. STATUTES. *Construction.* In construing an act of the Legislature, the intention will be allowed to prevail over the literal sense of the terms used.

2. SAME. *Same.* Where, therefore, in an act of the Legislature creating a new county, and providing for its organization out of fractions of four old counties, the boundaries of the new county were set out, and its area designated, the calls for distance in the lines, and of quantity in the area being put in figures with the usual sign of a degree, instead of a decimal point, between the figures, the calls being altogether unmeaning, if the sign be taken in its ordinary sense, but entirely consistent and appropropriate if read as a decimal notation, the latter reading will prevail.

Brown *v.* Hamlett.

3. CHANCERY PLEADINGS AND PRACTICE. *New counties. Evidence. Burden of proof.* Upon a bill filed by citizens of an old county to enjoin the organization of a new county, because it will reduce the old county below its constitutional area, and because the line of the new county will run within the constitutional distance from the county seat of the old county, the burden of proof is upon the complainants, and they must make out their case before the hearing by competent legal testimony, that is, by actual surveys and measurements, not by mere opinions upon insufficient and improper data.

### FROM HENDERSON.

Appeal from the Chancery Court at Lexington. GEO. H. NIXON, Ch.

JOHN M. TAYLOR for complainant.

MUSE & BUFORD, CAMPBELL & JACKSON, L. S. WOODS and McCORRY & BOND for defendants.

COOPER, J., delivered the opinion of the court.

The Legislature, by an act passed on the 4th of March, 1879, undertook to establish a new county out of fractions of Madison, Henderson, McNairy and Hardeman counties, to be known as Chester county. The second section of the act purports to give the boundaries and number of square miles of the new county, plainly implying that the lines had already been run, and the area contained therein ascertained. The commissioners appointed to organize the new county, took the census of the qualified voters of the several fractions of . territory to be taken from the old counties, and held an election in each fraction, at which two-thirds of the legal voters were found to be in favor

of the establishment of the new county. The commissioners then gave public notice of an election for county officers on September 24, 1879; when they were enjoined from further proceedings by this bill. The bill is filed by three citizens and tax payers of the county of Henderson, neither of whom resides, or owns any property in the fraction of territory proposed to be taken from the county to form a part of the new county. Upon final hearing, the chancellor made the injunction perpetual upon the ground that the act of the Legislature was . void, because of the uncertainty in the calls of the boundary lines of the new county, and the defendants appealed.

The uncertainty upon which the chancellor based his decree, and which is mainly relied on in this court for affirmance, grows out of the use, in the printed act, of a sign between the figures of several calls of the boundary lines. The complainants contend that the sign used is the normal sign for degrees in the calls for course, while the defendants insist that it was intended as a decimal mark in the calls for distance. One of these calls reads thus: "Thence with the arc of a circle with the radius of 11 miles from the town of Lexington 12°93 miles." Two other calls are: "Thence south with the McNairy and Hardin line 1°52 miles; thence west 1°39 miles." In the first of these quotations, as printed, there is a semi-colon after the words "11 miles," but it is so palpably a clerical or typographical error, that it need not be further noticed. Neither the intention of the law maker, nor the intention of a private individual, when clear, is

allowed to be prejudiced by bad punctuation, or bad grammar, or both.

The act of the Legislature, as we have seen, fairly implies that the boundaries of the proposed new .county have been run' out, and are intended to be given, with the number of square miles embraced therein. The bill of the complainants virtually concedes that the new county has been laid off, the fractions of the old county composing it ascertained, an election held, and the assent of the necessary constitutional majority of the voters obtained to the establishment of the new county. The point now relied on is not distinctly made, either by stating the facts on which it rests, or by an allegation that the boundaries are uncertain. It is only shadowed forth in the averment that the commissioners, instead .of following the bounds as set forth in the act, endeavored to establish new lines, and shorter ones, to meet the emergency of the case. Its importance seems to have been an after thought. The commissioners, and the surveyor employed by them, appear to have had no difficulty in understanding and applying the language of the act. And the proof leaves no doubt that, by adopting the construction of the defendants, the boundary lines all harmonize, and the designated area is properly determined.

The fundamental rule of construction of all instruments is, that the intention shall prevail, and for this purpose the whole of the instrument will be looked to. The real intention will always prevail over the literal use of terms. Legislative acts fall within the rule, and it has been well said, that a thing which is

in the letter of a statute is not within the statute unless it be within the intention of the law makers: *State* v. *Clarksville, etc., T. Co.*, 2 Sneed, 88; *Perkins* v. *Gibbs*, 1 Baxt., 175; *Gold* v. *Fite*, 2 Baxt., 249. When we examine the act before us, we find the declared legislative intent, and the sole object of its enactment, to be the establishment of a new county out of portions of four old counties, and by definite boundaries which are set out. If now, we construe the sign in controversy as the degree sign, and the figures preceeding the word miles, literally, we have first the arc of a circle of 93 miles, with a radius of 11 miles, which, as the circumference of a circle is three times its diameter, would complete the circle, and run partially around it again. So, if we extend the south line, called for in the second quotation above, 52 miles, we must, as complainant's counsel has himself argued, judicially know that it would extend beyond the limits of the State into the territory of another sovereignty. The calls, moreover, would *inter sese* have no possible connection. On the other hand, by reading the figures, as contended for by defendant, "12°93," "1°52" as $12\frac{93}{100}$ and $1\frac{52}{100}$ we are assured, by actual measurement, that the intention of the Legislature will be carried out. Besides, the sign in question is also used in the same section in giving the numbers of square miles in the new county, thus: "278°77 square miles," where it is impossible to read it as meaning degrees. And, lastly, the mark cannot be read as the degree sign in the cases in contest, because it is not followed by any reference to the points

of the compass, which is essential to confer upon it the usual meaning. In the only place in which it is thus used, it is properly used, as follows: "Thence north $61\frac{1}{2}°$ east 9 miles; thence north $26\frac{1}{2}°$ east to the Henderson and Marion county line." We cannot doubt that the sign was used by the printer as a decimal point in other places. Whether it is used in the enrolment of the act in the office of the Secretary of State, does not appear.

The bill seeks to avoid the act upon the ground that its boundaries will reduce the county of Henderson below its constitutional area of territory. But the allegation to this effect is denied in the answer, and there is no legal proof to sustain it. One witness says that by taking the aggregate number of acres assessed for taxes in Henderson county, for the year 1879 or 1880, as shown to him by the counsel of complainants, and dividing by 640, he found that the residue in square miles would be 582, the county being entitled to 500 square miles. Another witness is of opinion, without any measurement at all, that the fraction taken from Henderson county would amount to 100 square miles. The testimony of both witnesses was excepted to, and was clearly inadmissible. And, if admitted, would only have amounted to a probability of a probability; not proof.

The only other point relied on is that the line of the new county approaches the county seat of Henderson county within the constitutional limit of eleven miles. Here again, the allegation of the bill is denied by the answer, and the complainants have in-

47—VOL. 8.

troduced no legal proof. It does appear that about the year 1876, the county surveyor of Hardeman county, at the instance of the county court, surveyed a straight line of eleven miles from the court house in the direction of the nearest point of the line of the county, and put up a stake at the end thereof. The line of the new county is eighty yards beyond the stake. The line run by the surveyor was a straight line along the surface of the ground. He and another witness express the opinion that an air line, not following the inequalities of the ground, would extend between a half and three-quarters of a mile further. But both admit that they have made no measurements or calculations to ascertain the fact, and the principal witness frankly says that he has not sufficiently investigated the matter to decide upon it. The testimony was excepted to, and being mere opinion, was inadmissible. If it be conceded, therefore, that the proper mode of measurement was by an air line, the complainants have failed to make the necessary proof.

It is suggested that if the chancellor's decree is reversed, the case should be remanded for a survey of the line, and of the contested areas. But the issue was made by the pleadings, and it was the duty of the complainants to make out their case. Whatever may be the rights of the county of Henderson, these complainants are not entitled to litigate further.

The decree will be reversed, and the bill dismissed with the costs of the cause.